WITTELS LAW, P.C.
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FIRA DONIN and INNA GOLOVAN,**<br><br>**on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JUST ENERGY GROUP INC. and JUST ENERGY NEW YORK CORP.,**<br><br>**Defendants.** | *CLASS ACTION COMPLAINT*<br><br>Case No: 17 Civ. 5787<br><br>*JURY TRIAL DEMANDED* |

## TABLE OF CONTENTS

OVERVIEW OF DEFENDANTS' UNLAWFUL PRACTICES ................................................. 1

    I.    Defendants' Fraudulent, Deceptive, and Unlawful Conduct. ............................. 3

    II.   Just Energy's Contract and Marketing Materials Also Violate New York's Mandatory ESCO Disclosure Statute ................................................................... 6

PARTIES ................................................................................................................................ 7

JURISDICTION AND VENUE ............................................................................................ 18

FACTUAL ALLEGATIONS ................................................................................................ 19

    I.    Energy Deregulation and Resulting Wide-Spread Consumer Fraud. ............... 19

    II.   Just Energy Misled Its Customers and Then Gouged Them Compared to What They Would Have Paid Had They Stayed with Their Local Utility. ................. 24

    III.  Just Energy Violates New York's Statutory Disclosure Requirements for ESCOs that Charge Variable Rates .................................................................. 28

TOLLING OF THE STATUTES OF LIMITATION ............................................................ 29

    I.    Discovery Rule Tolling ..................................................................................... 29

    II.   Fraudulent Concealment Tolling ..................................................................... 30

    III.  Estoppel ............................................................................................................ 31

CLASS ACTION ALLEGATIONS ...................................................................................... 31

CAUSES OF ACTION .......................................................................................................... 35

    COUNT I – N.Y. GEN. BUS. LAW § 349-D(3) ................................................... 35

    COUNT II – N.Y. GEN. BUS. LAW § 349-D(3) ................................................. 37

    COUNT III – N.Y. GEN. BUS. LAW § 349-D(7) ............................................... 38

    COUNT IV – UNFAIR AND DECEPTIVE ACTS AND PRACTICES ................ 40

    COUNT V – COMMON LAW FRAUD ................................................................ 43

    COUNT VI – FRAUD BY CONCEALMENT ....................................................... 44

    COUNT VII – UNJUST ENRICHMENT .............................................................. 46

PRAYER FOR RELIEF ........................................................................................................ 47

Plaintiffs Fira Donin and Inna Golovan ("Plaintiffs"), by their attorneys Wittels Law, P.C. and Hymowitz Law Group, PLLC., bring this consumer protection action in their individual capacity, and on behalf of a Class of consumers defined below, against Just Energy Group Inc. and Just Energy New York Corp. (hereafter collectively "Just Energy" or "Defendants" unless otherwise specified), and hereby allege the following with knowledge as to their own acts, and upon information and belief as to all other acts:

## OVERVIEW OF DEFENDANTS' UNLAWFUL PRACTICES

1.    This consumer class action arises from Just Energy's fraudulent, deceptive, unconscionable, and bad faith conduct in "supplying" residential gas and electricity.

2.    Traditionally, residential gas and electricity was supplied by regulated utilities like Con Edison.  The rates utilities could charge were strictly controlled.  In the 1990s, however, Enron's unprecedented lobbying campaign resulted in deregulation of state energy markets in New York and elsewhere such that consumers were permitted to choose from a variety of companies selling residential energy.  Seizing on deregulation, independent energy service companies ("ESCOs") like Defendant Just Energy have grown rapidly.

3.    Just Energy entices residential customers to sign up for its service by offering its energy at low initial "teaser rates."  Yet Defendants don't alert their unsuspecting customers that when the teaser rate period expires consumers are charged exorbitant variable energy rates.  Just Energy's customers are given no advance notice of these excessive variable rates.  Just Energy also does not disclose to customers that its rates are consistently higher than the rates charged by consumers' existing utilities, or how variable rate customers can calculate (and avoid) Just Energy's steep variable gas and electricity charges.

1

4.      Just Energy also defrauds customers through a pricing shell game rigged in Just Energy's favor. When the underlying wholesale market price of gas and/or electricity that Just Energy purchases for re-sale goes ***up***, Defendants simply pass on these costs to their customers by raising rates. However, when the market price goes ***down***, Just Energy's rate remains at an inflated level higher than the market rate. Through this scheme, Just Energy subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing. Just Energy's practice of charging inflated electric and gas prices is intentionally designed to maximize revenue.

5.      Plaintiffs and the Class of Defendants' gas and electric customers have been injured by Defendants' unlawful practices. Accordingly, Plaintiffs and the Class defined below seek damages, restitution, declaratory, and injunctive relief for Just Energy's fraud, violation of state consumer protection statutes, and unjust enrichment.

6.      Defendants' deceptive marketing and sales practices are unlawful in multiple ways, including:

a.   Using introductory teaser rates to misrepresent the cost of Defendants' energy;

b.   Failing to adequately disclose that quoted rates are introductory teaser rates;

c.   Failing to adequately disclose when Defendants' introductory teaser rates expire;

d.   Actively misrepresenting the rates Defendants will charge when the teaser rates expire;

e.   Failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges;

f.   Failing to provide customers advance notice of the variable rate Defendants will charge; and

g.   Failing to clearly and conspicuously identify in its contract and marketing materials the variable charges in Defendants' variable energy plans.

7.     Only through a class action can Just Energy's customers remedy Defendants' ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Just Energy's unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit.  Further, many customers don't realize they are victims of Just Energy's deceptive conduct.  With this class action, Plaintiffs and the Class seek to level the playing field and make sure that companies like Just Energy engage in fair and upright business practices.

**I.     Defendants' Fraudulent, Deceptive, and Unlawful Conduct.**

8.     Price is the most important consideration for energy consumers.  Given that there is no difference at all in the electricity or natural gas that Just Energy supplies as opposed to the consumer's utility, the only reason a consumer switches to an ESCO like Just Energy is for the potential savings offered in a competitive market as opposed to prices offered by a regulated utility.  That is, after all, the entire point of energy deregulation.

9.     Understanding this basic fact about residential energy consumers' decision-making, Just Energy uses introductory teaser rates to misrepresent how much its energy costs.  For example, Just Energy enticed consumers like Plaintiffs and the Class to switch their gas and electric accounts by showing them low introductory rates.  Yet Defendants did not adequately apprise consumers that the sample energy rates were teaser rates.  Defendants also did not effectively reveal to consumers that Just Energy's introductory teaser rate would expire or the date on which Just Energy's actual variable rate would kick in.

10.     Defendants further defrauded and deceived Plaintiffs and the Class by actively misrepresenting the rates Just Energy charges when its teaser rates expire, and by failing to adequately disclose that Just Energy's gas and electricity rates are consistently higher than the rates

charged by the customers' regulated utility.

11.     Defendants are aware of the variable energy rates they intend to charge. Yet to conceal Just Energy's price gouging, Defendants do not provide customers any advance notice.

12.     Just Energy's material misrepresentations and omissions concerning its energy rates violate N.Y. GEN. BUS. LAW § 349-d(3), which prohibits deceptive acts and practices in the marketing of residential energy. Section 349-d(3) is part of a new law, called New York's ESCO Consumers Bill of Rights, which was specifically enacted in 2010 to combat widespread consumer fraud in New York's energy markets and to protect New York's energy consumers from underhanded business tactics like those employed by Defendants.

13.     Just Energy's material misrepresentations and omissions concerning its energy rates also violate New York's and other states' consumer protection statutes and common laws of fraud and unjust enrichment.

14.     Plaintiffs are not the only consumers harmed by Just Energy's conduct. On December 31, 2014, Just Energy agreed to settle strikingly similar claims brought by the Massachusetts Attorney General, making various concessions related to its deceptive residential energy sales and billing practices.[1]

15.     The Massachusetts Attorney General alleged that Just Energy made misleading, false, and unlawful representations and omissions concerning its energy, including that:

> Just Energy represented to consumers that purchasing residential gas and/or electricity from Just Energy will save customers money;

> Just Energy failed to disclose complete and accurate pricing information; and

---

[1] Assurance of Discontinuance, *In the Matter of Just Energy Group, Inc., et al.*, Mass. Sup. Ct., Suffolk, (Dec. 31, 2014), attached as Exhibit A.

Just Energy failed to disclose to consumers that its rates following any introductory period may be higher than the rates charged by consumers' traditional utilities.[2]

16.     In response to the Massachusetts Attorney General's allegations, Just Energy agreed to refund a total of $4,000,000 to Massachusetts customers along with implementing several key changes to its marketing and sales practices, as follows:

Just Energy must cease making representations, either directly or by implication, about savings that consumers may realize by switching to Just Energy, unless Just Energy contractually obligates itself to provide such savings to consumers."[3]

Where Just Energy quotes introductory teaser rates in its marketing material or in any verbal representation, the rate quote must be accompanied by a statement informing consumers that the quoted rate is an introductory rate and state when the rate will expire.[4]

Just Energy is banned for three years from enrolling consumers into variable rate energy products unless it complies with the following requirements:

- Within 30 days of a customer enrolling in a variable energy rate product, Just Energy must provide the customer with written notice of the date on which the introductory rate will expire.

- Any new contracts for variable rate products shall either (i) include the calculation that will be used to set monthly rates under the contract such that the customer can calculate the cost of Just Energy's residential energy, or (ii) make the rates available 60 days in advance via phone and the internet.[5]

For three years Just Energy is banned from charging consumers variable electricity rates in excess of 14.25¢ per kWh.[6] [7]

---

[2] *Id.* ¶¶ 19(a), 20(a)–(b).

[3] *Id.* ¶ 26(a).

[4] *Id.* ¶ 26(c).

[5] *Id.* ¶ 28(a)–(b), (d).

[6] *Id.* ¶ 30(a).

[7] Just Energy charged Plaintiff Donin electricity rates higher than this very high rate for 17 months while she was a Just Energy customer.  14 of those 17 months were consecutive.  For the 10 months of billing data Plaintiff Golovan possesses, Defendants charged her more than the 14.25¢ cap *every single month*.

For current Just Energy variable rate customers, the company is required to clearly and conspicuously post its current variable rates and post subsequent variable rates with at least 45 days advance notice.[8]  Just Energy is also required to mail notice to all existing Massachusetts variable rate customers alerting them to the fact that advance pricing information is now available via phone and on Just Energy's website, and that these customers can cancel their Just Energy contracts without paying termination fees.[9]

Just Energy must at its own expense hire an independent monitor for three years to audit *inter alia* Just Energy's Massachusetts marketing materials, billing data, consumer communications, and direct marketing efforts.[10]

Just Energy must distribute a copy of the Assurance of Discontinuance to current and future (for three years) principals, officers, directors, and supervisory personnel responsible for the Massachusetts market.[11]  Just Energy must also secure and maintain these individuals' signed acknowledgement of receipt of the Assurance of Discontinuance.

17.    Notably, while as discussed below Just Energy has been fined by regulators for deceptive marketing at least *six* times, no other actions have to date been brought by New York's or other states' enforcement authorities to recoup the millions Just Energy unlawfully extracted from consumers in New York and elsewhere.  That is the purpose of this action.

## II.    Just Energy's Contract and Marketing Materials Also Violate New York's Mandatory ESCO Disclosure Statute.

18.    Under N.Y. Gen. Bus. Law § 349-d(7), Just Energy is required to clearly and conspicuously identify its variable charges in *all* consumer contracts and in *all* marketing materials.  The purpose of this disclosure requirement is to ensure that consumers are adequately apprised of how their rates will be set.

---

[8] *Id.* ¶ 30(b).

[9] *Id.* ¶ 30(c).

[10] *Id.* ¶ 44, Attachment 2.

[11] *Id.* ¶ 46.

19.     Rather than complying with Section 349-d(7)'s disclosure requirements, Just Energy's marketing either does not mention its variable rates *at all* or fails to make the required disclosures in a clear and conspicuous manner.

20.     Just Energy's contracts, which arrive when a customer can still cancel without penalty, likewise fail to meet the New York ESCO Consumers Bill of Rights' variable charge disclosure requirements.

21.     Had Just Energy provided Plaintiffs with truthful, adequate, and appropriate disclosures about Just Energy's variable energy rates, they would not have switched to Just Energy.

## PARTIES

### *Plaintiff Fira Donin*

22.     Plaintiff Donin is a citizen of New York residing in Brooklyn, New York.

23.     In the Spring of 2012, Ms. Donin was contacted by a Just Energy sales representative.  Just Energy's representative used a written, standardized sales script and had been trained by Defendants in a way that emphasized uniformity in sales techniques.  Upon information and belief, Just Energy's representatives were only permitted to use sales scripts that had been centrally approved and the content of such scripts did not meaningfully vary over time.

24.     The Just Energy representative showed Ms. Donin Just Energy's rates for gas and electricity, which Plaintiff believed were representative of Just Energy's rates.  Based on these rates, Ms. Donin agreed to switch both her electric and gas account to Just Energy.  As described herein, however, Just Energy's statements about its rates were false, fraudulent, and constitute material misrepresentations.  Just Energy's statements both during the initial enrollment and at all relevant times thereafter also included several material omissions about Just Energy's variable

rates, as described herein.

25.     Shortly after agreeing to switch her gas and electric accounts to Just Energy, Defendants sent Plaintiff emails which misrepresented the rates Just Energy would charge after the introductory period.  The rates in Just Energy's emails were not substantially different from Defendants' teaser rates.  Just Energy's deceptive emails repeated and reinforced Defendants' misrepresentations and omissions regarding Just Energy's rates.

26.     Once Ms. Donin's gas and electricity accounts were successfully transferred to Just Energy, Defendants began supplying Plaintiff's residential energy in June 2012.  After Ms. Donin learned in August 2016 that she had been overcharged by Just Energy by more than $2,000 compared to what her local utilities would have charged, she notified Just Energy that she wanted to cancel her gas and electricity accounts.

### Plaintiff Inna Golovan

27.     Plaintiff Golovan is a citizen of New York residing in Brooklyn, New York.

28.     In or around the Summer of 2012, Ms. Golovan was contacted by a Just Energy sales representative.  Just Energy's representative used a written, standardized sales script and had been trained by Defendants in a way that emphasized uniformity in sales techniques.  Upon information and belief, Just Energy's representatives were only permitted to use sales scripts that had been centrally approved and the content of such scripts did not meaningfully vary over time.

29.     Defendants' representative showed Ms. Golovan Just Energy's electricity rate, which Plaintiff believed was representative of Just Energy's rates.  Based on this rate, Plaintiff Ms. Golovan agreed to switch her electric account to Just Energy.  As described herein, however, Just Energy's statements about its rate were false, fraudulent, and constitute material misrepresentations.  Just Energy's statements both during the initial enrollment and at all

8

relevant times thereafter also included several material omissions about Just Energy's variable rates, as described herein.

30.     Once Ms. Golovan's electricity account was successfully transferred to Just Energy, Defendants began supplying Plaintiff's residential electricity in August 2012.  After Ms. Golovan learned in April 2015 that Just Energy's electricity rates had been consistently high, she notified Just Energy that she wanted to cancel her electricity account.

### *Defendant Just Energy Group Inc.*

31.     Established in 1997, Defendant Just Energy Group Inc. (which refers to itself as "Just Energy"), is a publicly traded Canadian corporation incorporated under the laws of Ontario. In 2004, Just Energy made its initial expansion into the United States.  Headed by Enron alums James Lewis and Deborah Merril, Just Energy is operated out of dual headquarters in Houston, Texas and Toronto, Ontario.  Just Energy's operating affiliates include Defendant Just Energy New York Corp., Just Energy Illinois Corp., Just Energy Indiana Corp., Just Energy Texas L.P., Just Energy Massachusetts Corp., Just Energy Michigan Corp., Amigo Energy, Commerce Energy Inc., Green Star Energy, Hudson Energy Services, LLC, Momentis U.S. Corp., National Energy Corp., Tara Energy, Universal Energy Corporation, and Universal Gas and Electric Corporation.  Just Energy and its operating affiliates market and sell natural gas and/or electricity in New York, California, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, New Jersey, Ohio, Pennsylvania, and Texas.

32.     Just Energy's shares are traded on the Toronto Stock Exchange and the New York Stock Exchange bearing the ticker symbol "JE."  Just Energy is the 11th largest independent energy supplier in the United States, with over 1.8 million customers across North America. Variable rate plans are one of Just Energy's main products.

33.    Just Energy has amassed a damning public dossier.  The following chronology documents Defendants' deceptive business practices.

34.    In June 2003, the Toronto Star reported that Just Energy (then operating under the name Ontario Energy Savings Corp.) was fined for violating the Ontario Energy Board's code of conduct for fraudulently enrolling customers.[12]

35.    In 2008, the Illinois Attorney General sued U.S. Energy Savings Corp. (whose name was changed to Just Energy in 2012), alleging violations of Illinois' consumer fraud laws. The May 2009 Press Release announcing a $1 million settlement noted that the Illinois Attorney General had "received a nearly unprecedented number of calls from consumers who were deceived by false assurances that they would receive significant savings by switching to this alternative gas supplier."[13]  According to the Attorney General's complaint, among other deceptive conduct "consumers were led to believe that they would automatically save money by enrolling in the U.S. Energy Savings program."[14]

36.    During this same period, the Citizens Utility Board (the "CUB") and AARP filed a formal complaint with the Illinois Commerce Commission (the "ICC") alleging, *inter alia*, that Just Energy told customers they would "save money" by signing up, that consumers would not see any gas price increases if they signed up, and that Just Energy presented false and misleading information about its prices.[15]  In April 2010, the ICC found that Just Energy's sales and

---

[12] Spears, John, "*Energy marketers fined over forgeries*," Toronto Star (June 21, 2003).

[13] Press Release, "Madigan Secures $1 Million in Consumer Restitution from Alternative Gas Supplier for Deceptive claims," May 14, 2009.

[14] *Id*.

[15] Verified Original Complaint ¶19, Illinois Commerce Commission Docket 08-0175 (March 3, 2008).

marketing practices were deceptive, fined the company $90,000, and ordered an independent audit of its practices.[16]

37.     In July 2008, New York's Attorney General announced a $200,000 settlement with Just Energy (then named U.S. Energy Savings) and noted that the Attorney General's "office received hundreds of consumer complaints that sales contractors promised immediate savings on utility bills, but the price of gas was actually more than the price charged by the local utility because the price was locked in for a multi-year period."[17]

38.     As previously noted, in December 2014 Just Energy agreed to settle deceptive marketing claims brought by the Massachusetts Attorney General.

39.     In November 2016, Ohio's Public Utilities Commission (the "PUCO") fined Just Energy *for a second time* for misleading marketing practices.  An article in the Columbus Dispatch notes that Just Energy is an "energy company with a track record of misleading marketing," that it was fined by the PUCO in 2010 for deceptive marketing, and that it "sells energy contracts that often cost more than customers would pay if they received the standard service price."[18]  The article also mentions that some of the complaints that led to the PUCO's action "stemmed from contracts sold on behalf of Just Energy by another company, saveonenergy.com."[19]

---

[16] Press Release, "Illinois Commerce Commission Fines Just Energy for Deceptive Sales and Marketing Practices, Orders Audit," April 15, 2010.

[17] Press Release, "Attorney General Cuomo Stops WNY Natural Gas Provider From Deceiving Consumers by Misrepresenting Service Contracts," (July 4, 2008).

[18] Gearino, Dan, "Electricity marketer Just Energy fined over complaints,'" The Columbus Dispatch, (Nov. 4, 2016).

[19] *Id.*

40.    There are also numerous complaints about Just Energy on the internet.

41.    Over the last three years alone Just Energy has had at least 284 complaints filed with the Better Business Bureau (the "BBB").  Of the customer reviews posted to the BBB's website, 93% are categorized by the BBB as "Negative Reviews."

42.    Below are a few examples taken from the consumer complaint website Ripoff Report:[20]

**Just Energy Switched my energy rate to variable with NO NOTICE, doubled fees for six months.**

I have noticed over the past few months that the energy cost was getting higher and I thought it was due to the cold winter and higher energy usage.  I called Duquesne Light last month and they said call your energy supplier which is JUST ENERGY.  In December they had changed my fixed electrical usage rate to a nearly DOUBLE variable rate with NO NOTICE (total extra fees amounting to about $1,500.00).  I called Just Energy and tried to get reimbursed, they reviewed my account and said they sent me a POST CARD in the mail when the rate change occurred (which I have never received).  I have gotten no reimbursement and they offered to send me a $20.00 visa gift card which I declined.  If anyone can offer any information about anything I can do to try and reclaim some money that would be great!!!!

**Just Energy Our bill has doubled since signing up for this, "energy efficient" program.  Nipsco checked what we have been paying and what we are now paying and confirmed that.  Our thermostat is digitally programmed to have heat set at 65 and our bill is $354.20**

We signed up for Just Energy because of them of course telling us we can save more money on our gas bill.  We just received a bill of $354.20 and a disconnect notice.  We called Nipsco to figure out what is going on and they were able to look at what we have been paying with them which had been .38 cents per therm and now we are being charged double that!  I would like to note that our indoor thermostat is electronically programmed to be at 65 degrees when heat is running . . . .  I was also told by Nipsco that they cannot check or confirm because Just Energy is a different company, that we are now most likely stuck into a contract with these people and obligated to pay these outrageous bills.  Having 4 children having our services disconnected is not an option, it's just sad . . . that instead of buying my kids Christmas presents I now have to pay this high gas bill or go

---

[20] Misspellings corrected.

without heat in the dead of winter.

**Commerce Energy dba Just Energy Just Energy, US Energy Broken Promises**

For the past 7 months, I was understanding that Just Energy was a utility company that was about helping the consumer save money on their electric bills from AEP. Come to find out that they were in fact charging my account more than what I could have been paying if I stayed with AEP.  I was also told that when I signed up with them that my rate would be a fixed rate of 6.5 cents but in fact it wasn't.  I am completely at a loss of words at how this company has done me wrong.

I am on a very fixed income and every dollar I can save is a blessing, so when they come to my house promising that they can save me money I was all for it. Just recently I was told that I was being charged an additional fee of supplier charges that I wasn't supposed to have on my bill.  I am very upset with this and I want some explanation as to why this was happening . . . as well as I want my money back.  So to anyone who is thinking about signing up with this company, please do your research and think again.

**Just Energy of Massachusetts Just Energy of Ontario Just energy promised me 6.9 cents, not to ever go above Nstar rates, after a month or two the rate is almost twice Nstar rate, because I use electricity for heating my bill was very high after they doubled their rates that I noticed, most people would not, they ripped me off for $1,300, only God knows how much the rip off in their final month. Please do not sign with them.**

Just Energy sales representative called me promised 6.9 cents rate, that will never go above Nstar rate, that happened for a month or two, now my rate is almost twice Nstar rate, I only noticed because I use electricity for heat, my utilization is high so is my rip off, so I have to notice most people with low utilization would not, they ripped me off $1,300 in 2 months and only God knows how much is the rip off this month, the problem is by the time you realize and change they already ripped you off 3 months.  Please no matter what you do, do not sign up with Just Energy.

**Just Energy 100% scam.  Pushy sales people lie.  Company won't cancel service.  Rates went way up!!!**

Pushy sales people who lie.  Rates went way up, not down as promised. Company not allowing me to cancel service. . . . Upon receiving the first bill after the switch to Just Energy our cost for gas doubled, and electric went up 50%. Calls to cancel service and switch back to our local company do not go though, month after month I continue to get ripped off.

**Just Energy Scummy bunch of scheisters!  Avoid them at any cost.  I bought their spiel, and I suffered as a result.  Prices are not competitive.  After I moved, they screwed me cause I wouldn't continue with the Just Energy, Scam, Untrustworthy, Avoid**

AVOID Just Energy.  Quick talking salesmen, who will rip you off.  Rates are not competitive, and they charged me $50 when I moved out of my apartment.  Never deal with this company if you want a truth in advertising and a good deal.

**USESC, Just Energy Scammed me I'm a 72 year old Hispanic. This man flashed a badge made me get my gas bill and promised I'd save money.**

I am a 72 year old Hispanic lady, on social security and Section 8.  A man showed up at my apartment.  He flashed a badge and began to explain on what USESC was all about.

He talked about how high the gas rates are going and that by signing with this company I would be locked into a certain rate and that my gas bills would be lower.  He made me get my current gas bill and he showed me the rate I was at and compared it to a rate he said I would be locked into.

I was made to believe that I would be saving money.  When I began to look at my bills after signing I noticed that instead of saving money I have begun to pay more.  On my bills I have seen a 200 dollar increase monthly and have not saved a dime on anything.

I was completely scammed into signing this contract and I believe it's because I'm a senior citizen.  I now cannot afford to pay my gas bill and feed my children.

It would be best if no one else got scammed the way I did. I'm raising my grandchildren and we are barely surviving.  I'm outraged that a company would purposely scam the weak and helpless

Heaven
Chicago, Illinois
U.S.A.

**just energy I sign a contract with just energy and the bill went up instead of down**

I sign a contract with just energy and the bill went up instead of down . . . .

43.     Just Energy's twitter feed tells a similar story, as the word "scam" appears more

than 40 times in posts from 2009 to the present.

14

44.    Media reports about Just Energy equally condemn Defendants for deceptive conduct.  When the confidential results of the audit ordered by the ICC referenced in Paragraph 36 above were made public, Chicago's CBS affiliate reported that between 2010 and 2011 Just Energy received over 29,729 customer complaints.[21]  "There were so many complaints over so many years with so little company oversight on how they were handled that the audit said, '[a]n adequate compliance culture at the top levels of the organization is not evident.'"[22]

45.    A 2014 exposé by Canada's Global News highlights that the "CUB, the Better Business Bureau (BBB), the Ontario Energy Board, among others, have been inundated with complaints from consumers about the sales methods employed by Just Energy.  The most common grievance is Just Energy promises people savings that don't materialize."[23]

46.    The exposé further references Just Energy's founder Rebecca MacDonald who has "raked in an estimated $150 million from the company since she established it in the 1990s" and is facing accusations "over whether she's misled investors in her company."[24]  Those accusations include that MacDonald faked her credentials and the conclusions by "two of Canada's top forensic accounting firms" that Defendants used "an unregulated form of accounting to paint a much rosier picture of the company's financial situation," which in turn allowed Just Energy to show an "artificial profit."[25]

---

[21] Zekman, Pam, "Alternative Energy Supplier Has Long Record Of Fraud Complaints," *CBS2*, (Jan. 15, 2013).

[22] *Id.*

[23] Livesey, Bruce, "Canadian energy company stalked by controversy over its sales methods," *Global News*, (Nov. 6, 2014).

[24] *Id.*

[25] *Id.*

47.     The Global News exposé also contains a 22-minute video entitled the "Just Energy Hustle."  Below is an excerpt of a Global News Journalist's videotaped interview with Just Energy's Co-CEO Deborah Merril.  Despite having joined Just Energy in 2007, in the 2014 interview the Co-CEO denies even knowing about the many criticisms leveled at Just Energy's marketing and sales practices:

> Journalist: "Critics have accused your company of underhanded sales tactics, sleazy tactics to try to get people to sign their name to a contract"
>
> Co-CEO Merril: "I have not heard those accusations, so, nobody said that to me, no.
>
> Journalist: "Really, this is news to you?"
>
> Co-CEO Merril: "No, nobody's said that to me. I think it's . . . ."
>
> Journalist: "It's your company.  I mean, you know. . . ."
>
> Co-CEO Merril: "I would disagree with that."
>
> Journalist: "You would disagree that there's a view that your company is doing things at the door that it shouldn't be doing?"
>
> Co-CEO Merril: "No, I'm saying that mistakes happen and we take 'em very seriously."

"The Just Energy Hustle," Minutes 18:35 to 19:18.[26]

48.     More than a year prior to the Global News exposé, on July 31, 2013, New York-based investment management firm Spruce Point Capital Management released an investment analysis that labeled Just Energy as "a company that U.S. consumers and investors are quickly realizing has become toxic to their wallets through deceptive energy marketing practices, and

---

[26] *Available at:* https://globalnews.ca/news/1656865/canadian-energy-company-stalked-by-controversy-over-its-sales-methods/

harmful to their brokerage accounts."[27]  The report signaled that Just Energy's "growth appears to be the result of deceptive sales tactics, now at risk of unravelling" which is "evidenced by a large body of consumer fraud complaints."[28]

49.   The report also highlights how Just Energy (referred to below as "JE") uses a teaser rate to deceive consumers:[29]

As noted in the table below, JE "appears" to offer the lowest price fixed contract, but as discussed below there's a 'catch.'

| | ConEd Solutions | Constellation | Spark Energy | Greenlight Energy | US Gas & Electric | Just Energy | Constellation | Spark Energy | Greenlight Energy | Just Energy |
|---|---|---|---|---|---|---|---|---|---|---|
| Commodity | Electric | Electric | Electric | Electric | Electric | Electric | Gas | Gas | Gas | Gas |
| Term (months) | 12 | 12 | 12 | None | 5 | 60 | 12 | 12 | None | 60 |
| Initiation Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Cancellation Fee | - | - | - | - | $50.00 | $50.00 | - | - | - | $50.00 |
| Monthly Fee | - | - | - | - | - | - | - | 4.95 | - | - |
| Unit Cost (c/KWh | c/therm) | 10.45c | 10.99c | 10.49c | 10.00c | 10.50c | 7.15c | 67.90c | 77.50c | 66.00c | 62.00c |

Source: ConEdison website and company websites. End of April 2013

JE's gas RateFlex prices are fixed *only for three* months – despite the 5-year term – and after three months, the contract reverts to a *fluctuating* price based on "*business and market conditions.*" The Electric RateFlex is fixed for 2 months. JE then gives its customers the option of locking in this new, variable and unknown price. The company tries to reassure consumers that the rate won't fluctuate that much by guaranteeing that the variable rate won't increase by more than *35% per month* (see: section 7). Just Energy also allows consumers to cancel their contract free within 30 days – before the misleadingly low introductory price expires – but charges a $50 "Exit Fee" if cancelled thereafter. Of course, most consumers don't bother to read the fine print, particularly if salesmen are pushing quick cash back incentives with Visa Gift Cards for registering and referring friends.

---

[27] Spruce Point Capital Management, "Just Energy:  Another Dividend Cut Poses An Above Average Risk to Investors" at 2 (July 31, 2013), *available at:* http://www.sprucepointcap.com/just-energy/.

[28] *Id.* at 3.

[29] *Id.* at 4–5.

*Defendant Just Energy New York Corp.*

50.    Defendant Just Energy New York Corp. is a Delaware company with its principle executive office in Toronto, Ontario.  Defendant Just Energy Group Inc.'s public financial filings reveal that it completely controls its operating affiliates, including Defendant Just Energy New York Corp.  These filings and other public data show that Just Energy Group Inc. and its unified executive team control all operational and financial aspects of its operating affiliates, which are run on a consolidated basis as one company.  Just Energy Group Inc. used its operating affiliates to perpetrate the unlawful conduct challenged in this lawsuit.  Just Energy Group Inc. reports its operating affiliates' earnings and losses in a consolidated format.  Defendant Just Energy New York Corp. is the corporate entity that supplied Plaintiffs' energy.

## JURISDICTION AND VENUE

*Subject Matter Jurisdiction*

51.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act").

52.    This action meets the prerequisites of the Class Action Fairness Act, because the claims of the Class defined below exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

*Personal Jurisdiction*

53.    This Court has general personal jurisdiction over Defendants.  Defendants do business in New York through continuous, permanent, and substantial activity in New York.

54.    This Court has specific personal jurisdiction over Defendants because they maintain sufficient contacts in this jurisdiction, including the advertising, marketing, distribution

and sale of natural gas and electricity to New York consumers.

*Venue*

55.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).  Substantial

acts in furtherance of the alleged improper conduct occurred within this District and Plaintiffs

reside within this District.

## FACTUAL ALLEGATIONS

**I.     Energy Deregulation and Resulting Wide-Spread Consumer Fraud.**

56.     In 1996, New York deregulated the sale of retail gas and electricity.  As a result of

deregulation, New York consumers can purchase natural gas and electricity through third-party

suppliers while continuing to receive delivery of the energy from their existing public utilities.

These third-party energy suppliers are known as energy service companies, or "ESCOs."  Since

New York opened its retail gas and electric markets to competition, more than a million New

York consumers have switched to an ESCO.

57.     ESCOs are subject to minimal regulation by New York's utility regulator, the

New York State Public Service Commission (the "PSC").  ESCOs like Just Energy do not have

to file their rates with the PSC, or the method by which those rates are set.

58.     ESCOs play a middleman role: they purchase energy directly or indirectly from

companies that produce energy and sell that energy to end-user consumers.  However, ESCOs do

not **deliver** energy to consumers.  Rather, the companies that produce energy deliver it to

consumers' utilities, which in turn deliver it to the consumer.  ESCOs merely buy gas and

electricity at the wholesale rate and then sell that energy to end-users with a mark-up.  Thus,

ESCOs are essentially brokers and traders: they neither make nor deliver gas or electricity, but

merely buy energy from a producer and re-sell it to consumers.

59.     If a customer switches to an ESCO, the customer's existing utility continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

60.     After a customer switches to an ESCO, the customer's energy supply charge (based either on a customer's kilowatt hour [electricity] or therm [gas] usage) is calculated using the supply rate charged by the ESCO and not the regulated rate charged by the customer's former utility.  The supply rate charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") or therms multiplied by the rate.  For example, if a customer uses 145 kWh at a rate of 10.0¢ per kWh, the customer will be billed $14.50 (145 x $.10) for their energy supply.

61.     Almost all states that deregulated their energy markets did so in the mid to late 1990s.  This wave of deregulation was frantically pushed by then-corporate superstar Enron.  For example, in December 1996 when energy deregulation was being considered in Connecticut, "the most aggressive proponent" of deregulation, Enron CEO Jeffrey Skilling said:

> Every day we delay [deregulation], we're costing consumers a lot of money . . . .
> It can be done quickly.  The key is to get the legislation done fast.[30]

62.     Operating under this sense of urgency, the states that deregulated suffered serious consumer harm.  For example, in 2001 forty-two states had started the deregulation process or were considering deregulation.  Today, the number of full or partially deregulated states has dwindled to only seventeen and the District of Columbia.  Even within those states several have recognized deregulation's potential harm to everyday consumers and thus only allow large-scale consumers to shop for their energy supplier.

63.     Responding to shocking energy prices, many key players that supported

---

[30] Keating, Christopher, "Eight Years Later . . . 'Deregulation Failed,'" *Hartford Courant*, Jan. 21, 2007.

deregulation now regret the role they played.  For example, reflecting on Maryland's failed

deregulation experience, a Maryland Senator commented:

> Deregulation has failed.  We are not going to give up on re-regulation till it is
> done.[31]

64.     A Connecticut leader who participated in that state's foray into energy

deregulation was similarly regretful:

> Probably six out of the 187 legislators understood it at the time, because it is so
> incredibly complex. . . .  If somebody says, no, we didn't screw up, then I don't
> know what world we are living in.  We did.[32]

65.     One of deregulation's main unintended consequences has been the proliferation of

ESCOs like Just Energy whose business model is primarily based on deception.  As a result of this

widespread consumer fraud, states like New York began enacting post-deregulation remedial

legislation meant to "establish[] important consumer safeguards in the marketing and offering of

contracts for energy services to residential and small business customers."[33]  As the sponsoring

memorandum notes, the ESCO Consumers Bill of Rights, codified as G.B.L. Section 349-d, in

2010 sought to end the exact type of deceptive conduct Plaintiffs challenge here:

> Over the past decade, New York has promoted a competitive retail model for the
> provision of electricity and natural gas.  Consumers have been encouraged to switch
> service providers from traditional utilities to energy services companies.
> Unfortunately, consumer protection appears to have taken a back seat in this process.
>
> * * *
>
> High-pressure and *misleading sales tactics*, onerous contracts with unfathomable
> *fine print*, short-term "teaser" rates followed by *skyrocketing* variable prices—many
> of the problems recently seen with subprime mortgages are being repeated in energy

---

[31] Hill, David, "State Legislators Say Utility Deregulation Has Failed in its Goals," *The Washington Times*, May 4, 2011.

[32] Keating, *supra*.

[33] ESCO Consumers Bill of Rights, New York Sponsors Memorandum, 2009 A.B. 1558, at 1 (2009) attached as Exhibit B.

competition.  Although the PSC has recently adopted a set of guidelines, its "Uniform Business Practices" are limited and omit important consumer protections in several areas.  The fact is, competition in supplying energy cannot succeed without a meaningful set of standards to weed out companies whose business model is based on taking unfair advantage of consumers.

*Id*. at 3–4 (emphasis added).

66.    Regulators have also begun to call out the high levels of fraud that pervade deregulated energy markets.  For example, in 2014 New York's PSC concluded that New York's residential and small-commercial retail energy markets were plagued with "marketing behavior that creates and too often relies on customer confusion."[34]  The PSC further noted "it is extremely difficult for mass market retail energy customers to access pricing information relevant to their decision to commence, continue or terminate service through an ESCO."[35]

67.    The PSC's complaint data confirms its conclusions.  The PSC's annual complaint statistics reports indicate that in 2012 the PSC received 1,733 ESCO related complaints of which 322 alleged deceptive marketing.  The number of ESCO related complaints increased to 2,384 in 2013 with 2,001 reporting deceptive marketing practices.  In 2014 there were 4,640 initial ESCO related complaints, with 2,510 claiming deceptive marketing.  In 2015 the data shows there were 5,044 initial ESCO related complaints with 2,348 alleging deceptive marketing practices.  In 2016 there were 2,995 initial complaints against ESCOs, with 1,375 alleging deceptive marketing practices.

68.    The number of deceptive marketing allegations against ESCOs far exceed the combined number of complaints received by all other regulated utilities in New York, including

---

[34] CASE 12-M-0476, Order Taking Actions to Improve the Residential and Small Nonresidential Retail Access Markets, at 4 (Feb. 20, 2014).

[35] *Id*. at 11.

the lightly regulated telecommunications industry.  Further, no single ESCO or single region of New York is responsible for most of the complaints.  Rather, the complaint data demonstrates that consumer fraud is part of the industry's standard operating procedures.

69.     A large percentage consumer complaints to the PSC concern variable rate pricing like Defendants' where consumers' bills are more or less as advertised during the teaser or fixed rate period, but after this initial period expires, instead of switching the consumer back to the utility the ESCO uses the consumers' inaction to substantially increase the price without further notice or explanation as to how the new rate is determined.

70.     Statistics from the New York Attorney General's ("NYAG") office confirm the pattern of activity this consumer class action seeks to combat.  From at least the year 2000 to the present, the NYAG has investigated numerous ESCOs' deceptive and illegal business practices. These investigations have resulted in seven settlements providing for extensive injunctive relief and millions in restitution and penalties.

71.     In the last three years, the NYAG has also directly received more than 600 complaints against ESCOs.  These complaints demonstrate that the ESCO practices that were the subject of the NYAG's previous settlements continue, and that industry participants like Just Energy view regulatory enforcement actions as simply the cost of continuing their fraudulent business practices.

72.     The deceptive conduct of ESCOs like Just Energy has been devastating to consumers nationwide.  For example, based on data recently provided by the major New York electric and gas utilities, the PSC calculated that for the 30 months from December 30, 2013 to June 30, 2016 New York's ESCO customers paid nearly $820 million more for energy than they would have had they stayed with their local utility.  New York's low-income consumers have

also been hit hard.  The utilities reported that low-income ESCO customers paid almost $96 million more than residential utility customers for the same period.

73.      Based in large part on the flood of consumer complaints, negative media reports, and data demonstrating massive overcharges the PSC announced in December 2016 an evidentiary hearing to consider primarily whether ESCOs should be "completely prohibited from serving their current products" to New York residential consumers.[36]  In other words, to reassess whether New York's deregulation experiment has failed everyday consumers.

74.      This class action, which seeks more than $100,000,000 in damages, restitution, penalties, and equitable relief is further proof that residential energy deregulation has been an abject failure.

## II.    Just Energy Misled Its Customers and Then Gouged Them Compared to What They Would Have Paid Had They Stayed with Their Local Utility.

75.      To convince consumers to switch, Defendants represented that customers would save money on their energy costs by switching over from their current utilities.

76.      As evidenced by the fact that Just Energy used to be called "U.S. Energy Savings," Defendants understand that the potential for saving money on their home energy costs is the primary, if not exclusive, reason consumers switch to Just Energy.

77.      Defendants' primary way of enticing consumers with promised savings is through Just Energy's teaser rates.  Defendants make the consuming public aware of Just Energy's teaser rates through various means, including via company-controlled in-person solicitations, telemarketing calls from Defendants' call centers, internet ESCO price aggregators such as www.chooseenergy.com and www.saveonenergy.com that Defendants pay to showcase Just

---

[36] CASE 12-M-0476, Notice of Evidentiary and Collaborative Tracks and Deadline for Initial Testimony and Exhibits, at 3 (December 2, 2016).

Energy's prices, or through state utility ESCO pricing websites such as New York's

www.newyorkpowertochoose.com.

78.    Just Energy's teaser rates consistently misrepresent the cost of Defendants'

energy because they suggest Just Energy's rates are lower than what Just Energy knows it will

eventually charge consumers once the teaser period expires.  Just Energy's teaser rates also

misleadingly suggest to the consumer that Just Energy's rates are lower than their utility's rates.

The truth is that Just Energy has a long history of charging substantially more than customers'

local utilities.

79.    To compound the deception, Defendants do not adequately disclose that the

quoted rates are introductory teaser rates and that when Just Energy's teaser rates expire the

consumer will pay a rate that is much higher than the utility's rate.

80.    Defendants also do not adequately disclose when Just Energy's teaser rates

expire.  Instead, Just Energy enrolls consumers into variable rate plans knowing (but failing to

disclose) that once the teaser rate expires Just Energy's rates will surpass the utility's rates.

81.    Just Energy also actively misrepresents the rates it will charge when its teaser

rates expire.  For example, in April 2012 Just Energy sent Plaintiff Donin an email stating that

she would be charged an electric rate of 8¢ per kWh once her "intro period" lapsed.  Yet Just

Energy consistently charged Ms. Donin more than 8¢ per kWh.  The Just Energy billing data Ms.

Donin has in her possession shows that Just Energy's charges were far in excess of 8¢ per kWh.

82.    Despite having ample advance notice of the variable rates it will impose on

customers, Just Energy also fails to advise consumers of the rates they will be charged.

83.    Defendants' entire sales model is structured to take advantage of well-studied

patterns of human decision-making.  Just Energy lures consumers to switch with misleading

teaser rates and then exploits consumer inertia once those rates expire to bill consumers for its high-priced residential energy.

84.    It is well-established that defaults are powerful drivers of consumer behavior.  There are various factors underlying this human tendency that have been discussed in the judgment and decision-making literature, such as the work about defaults and the "status quo bias,"[37] and "Nudges."[38]

85.    In this case, Defendants know that once they have the consumer enrolled they can charge high energy rates and many consumers (if not most) will simply pay Defendants' exorbitant charges.

86.    Defendants' cynical exploitation of consumer inertia is further exacerbated by the fact that (i) it is extremely difficult for consumers to compare Just Energy's prices with what their local utility charges, and (ii) Just Energy tacks on early termination fees as a disincentive to consumer mobility and choice.

87.    Upon being shown Just Energy's teaser rate, a reasonable consumer understands—and expects—Just Energy's rates would typically be lower than the utility's rates.

88.    But Just Energy's rates do no such thing.  Instead, during the class period and during the time Plaintiffs were Just Energy customers, there were extended lengths of time in which Just Energy's rates were higher than the utility's rates.

89.    Further, there are extended periods of time when the wholesale market price of gas or electricity declined or remained steady, yet Just Energy's prices rose.  Moreover, even

---

[37] Daniel Kahneman, Jack L. Knetsch and Richard H. Thaler (1991), "Endowment Effect, Loss Aversion, and Status Quo Bias," *The Journal of Economic Perspectives*, Vol. 5, pp. 193–206.

[38] R. Thaler and S. Sunstein (2008), *Nudge*, Yale University Press.

when market prices rise, Just Energy's rates often increase at a faster and higher rate than the market rates.  But Just Energy does not disclose these material facts to its prospective or current customers.[39]

90.    Just Energy misleads consumers into thinking that its rates are lower than consumers' utilities' rates.  Yet for the period Plaintiff Donin was able to obtain comparison data for what her electric utility would have charged, May 2015 to July 2016, Just Energy billed Ms. Donin more than the utility *every single month*.  These overcharges total more than $375.  For Plaintiff Donin's gas utility, Just Energy charged more than the utility *every single month* for the 31 months from December 2013 to July 2016 for which data was available to Ms. Donin.  For this period Ms. Donin paid Just Energy $1,929.06 more than she would have paid her gas utility.

91.    No reasonable consumer exposed to Just Energy's marketing would expect that Just Energy would charge them more than the utility by so much money for so long.

92.    The rates Just Energy actually charges in comparison to the utility rate demonstrates the deceptive nature of Just Energy's marketing.

93.    Thus, Just Energy's statements with respect to the rates it will charge are materially misleading.  Instead, consumers are charged rates that are substantially higher.  Just Energy fails to disclose this and other material fact to its customers.

94.    No reasonable consumer who knows the truth about Just Energy's exorbitant rates would choose Just Energy as an electricity or natural gas supplier.

---

[39] The wholesale cost of energy is the most significant and potentially volatile component of electricity and natural gas costs that ESCOs like Just Energy incur for supplying energy.  Costs associated with transmission or transportation costs or other similarly static market and business price related factors do not account for the extent to which Just Energy's prices are disassociated from changes in wholesale prices.

95.    Just Energy intentionally makes these misleading statements regarding its rates to induce reasonable consumers to rely upon its statements and switch their energy supply.

## III.    Just Energy Violates New York's Statutory Disclosure Requirements for ESCOs that Charge Variable Rates.

96.    Because of the New York Legislature's concerns with skyrocketing variable rates, New York adopted N.Y. GEN. BUS. LAW § 349-d(7), which requires that "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified."

97.    Through their conduct, Defendants have violated both the spirit and letter of N.Y. GEN. BUS. LAW § 349-d, the law that is explicitly designed to allow energy consumers to make informed choices: "These provisions will go a long way toward restoring an orderly marketplace where consumers can make informed decisions on their choices for gas and electric service . . . ."[40]

98.    At all relevant times Defendants' marketing materials and contracts never clearly and conspicuously apprised Plaintiffs of the actual factors that make up Just Energy's variable rate.

99.    The marketing materials Defendants produced that were provided to Plaintiffs and the Class violate N.Y. GEN. BUS. LAW § 349-d(7) by not clearly and conspicuously setting forth all of the factors actually affecting Just Energy's variable rates.  Indeed, most of the marketing materials provided to Plaintiffs and the Class do not even mention that Just Energy's rates are variable, nor do they comply with the statute's requirement that the factors that comprise Just Energy's rate be clearly and conspicuously disclosed.

---

[40] Exhibit B, New York Sponsors Memo at 4.

100.    Further, as described below, the various incarnations of Just Energy's consumer contract provided to Plaintiffs and the Class also violate N.Y. GEN. BUS. LAW § 349-d(7).

101.    The Just Energy sales representative who signed up Plaintiffs used Just Energy marketing material and Just Energy's published teaser rates.  Among other omissions, that sales representative failed to mention that once the teaser rate expires Just Energy's prices are invariably higher than the utility's rates almost all of the time.  Based on the sales representative's statements, Plaintiffs decided to switch to Just Energy.

102.    The Just Energy materials the representative provided to Plaintiffs did not contain language clearly and conspicuously describing the factors that affect Just Energy's variable rates or disclose that Just Energy's rates were variable.

103.    Following their agreement to switch their accounts to Just Energy, the contracts Plaintiffs received fail to make the clear and conspicuous disclosure of Just Energy's variable rates as mandated by New York's ESCO Consumers Bill of Rights, as noted above.

104.    Plaintiffs would have never signed up to purchase energy from Just Energy had Defendants complied with N.Y. GEN. BUS. LAW § 349-d(7).

## TOLLING OF THE STATUTES OF LIMITATION

### I.    Discovery Rule Tolling

105.    Plaintiffs and the Class had no way of discovering Just Energy's unlawful conduct.  Even New York's public utility regulator, the PSC, has concluded that "it is extremely difficult for mass market retail energy customers to access pricing information relevant to their decision to commence, continue or terminate service through an ESCO."[41]  By contrast, Just

---

[41] CASE 12-M-0476, Order Taking Actions to Improve the Residential and Small Nonresidential Retail Access Markets, at 11 (Feb. 20, 2014).

Energy was so intent on expressly hiding the fact that consumers had been duped by Defendants' deceptive teaser rates, Defendants concocted a scheme to misrepresent the rates it would charge once the teaser rates expire.  Defendants further failed to give customers advance notice of the variable rates it was going to assess, even though Defendants knew well in advance what those rates would be.

106.    Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered Just Energy's illegal conduct through the exercise of reasonable diligence.

107.    Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect they were victims of Just Energy's illegal conduct.

108.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

## II.    Fraudulent Concealment Tolling

109.    All applicable statutes of limitation have also been tolled by Just Energy's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

110.    Instead of disclosing that its quoted rates are teaser rates, when those rates will expire, that its energy rates are consistently higher than the rates a customer's existing utility charges, and giving consumers advance notice of the rates Defendants will charge, Just Energy used its teaser rates to falsely represent the cost of its energy and actively misrepresented the rates Defendants would charge once the teaser rate expired.

### III.    Estoppel

111.    Just Energy was under a continuous duty to disclose to Plaintiffs and the other Class Members the truth about its energy rates.

112.    Just Energy knowingly, affirmatively, and actively concealed the true nature of its rates from consumers.

113.    Just Energy was also under a continuous duty to disclose to Plaintiffs and Class Members that it was receiving thousands of complaints from customers who had been led to believe that they would save money with Just Energy compared to their incumbent utility.

114.    Based on the foregoing, Just Energy is estopped from relying on any statutes of limitations in defense of this action.

### CLASS ACTION ALLEGATIONS

115.    Plaintiffs sue on their own behalf and on behalf of a Class for damages, injunctive, and all other available relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

116.    The Class, preliminarily defined as two subclasses ("Subclasses"), is as follows:

    a.    The Multistate Class, preliminarily defined as all Just Energy customers in the United States (including customers of companies Just Energy acts as a successor to) who were charged a variable rate for their energy at any time from [applicable statute of limitations period] to the date of judgment.

    b.    The State Classes, preliminarily defined as all Just Energy customers in the state of [e.g., New York, California, etc.] (including customers of companies Just Energy acts as a successor to) who were charged a variable rate for their energy at any time from [applicable statute of limitations period] to the date of judgment.

117.    Excluded from the Subclasses (hereafter collectively the "Class" unless otherwise specified) are the officers and directors of Defendants, members of the immediate families of the

officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or have had a controlling interest.  Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

118.    Plaintiffs reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add additional Subclasses, when Plaintiffs file their motion for class certification.

119.    Plaintiffs do not know the exact size of the Class, since such information is in the exclusive control of Defendants.  Plaintiffs believe, however, that based on the publicly available data concerning Just Energy's customers in the United States, the Class encompasses more than one million individuals whose identities can be readily ascertained from Defendants' records.  Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

120.    The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control.  Plaintiffs anticipate providing appropriate notice to each Class Member, in compliance with all applicable federal rules.

121.    Plaintiffs are adequate class representatives.  Their claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  Plaintiffs and the other members of the Class were subject to the same or similar conduct engineered by Defendants.  Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

122.     Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class.

123.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

    a.  Whether Defendants' conduct violates New York General Business Law §349-d;

    b.  Whether Defendants' conduct violates New York General Business Law §349;

    c.  Whether Defendants' conduct violates various other state consumer protection statutes;

    d.  Whether Defendants' representations are fraudulent;

    e.  Whether Defendants engaged in fraudulent concealment;

    f.  Whether Defendants were unjustly enriched as a result of their conduct;

    g.  Whether Class Members have been injured by Defendants' conduct;

    h.  Whether any or all applicable limitations periods are tolled by Defendants' acts;

    i.  Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

    j.  The extent of class-wide injury and the measure of damages for those injuries.

124.     A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially

impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; iii) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

125.    Further, the following issues are also appropriately resolved on a class-wide basis under FED. R. CIV. P.  23(c)(4):

     a.   Whether Defendants' conduct violates New York General Business Law §349-d;

     b.   Whether Defendants' conduct violates New York General Business Law §349;

     c.   Whether Defendants' conduct violates various other state consumer protection statutes;

     d.   Whether Defendants' representations are fraudulent;

     e.   Whether Defendants engaged in fraudulent concealment;

     f.   Whether Defendants were unjustly enriched as a result of their conduct;

     g.   Whether any or all applicable limitations periods are tolled by Defendants' conduct; and

     h.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

126.    Accordingly, this action satisfies the requirements set forth under FED. R. CIV. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

## COUNT I

## N.Y. GEN. BUS. LAW § 349-D(3)

## (ON BEHALF OF THE NEW YORK CLASS)

127.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349-d(3) on their own behalf and on behalf of each member of the New York Class who became a Just Energy customer on or after January 10, 2011, the operative date of Section 349-d.

129.    N.Y. GEN. BUS. LAW §349-d(3) provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

130.    Defendants offer for sale energy services for and on behalf of an ESCO.

131.    Defendants have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349-d(3), including:

    a.  Using introductory teaser rates to misrepresent the cost of Defendants' energy;

    b.  Failing to adequately disclose that quoted rates are introductory teaser rates;

    c.  Failing to adequately disclose when Defendants' introductory teaser rates expire;

    d.  Actively misrepresenting the rates Defendants will charge when the teaser rates expire;

    e.  Failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges; and

     f.   Failing to provide customers advance notice of the variable rate Defendants will charge.

132.    The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

133.    N.Y. GEN. BUS. LAW § 349-d(10) provides that "any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff."

134.    As a direct and proximate result of Defendants' unlawful deceptive acts and practices, Plaintiffs and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action but not less than $500 for each violation, such damages to be trebled, plus attorneys' fees.

135.    Plaintiffs and the other Class Members further seek an order enjoining Defendants from undertaking any further unlawful conduct.  Pursuant to N.Y. GEN. BUS. LAW § 349-d(10), this Court has the power to award such relief.

## COUNT II

### N.Y. GEN. BUS. LAW § 349

### (ON BEHALF OF THE NEW YORK CLASS)

136.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

137.    Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349 on their own behalf and on behalf of each member of the New York Class.

138.    Defendants have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349, including:

    a.    Using introductory teaser rates to misrepresent the cost of Defendants' energy;

    b.    Failing to adequately disclose that quoted rates are introductory teaser rates;

    c.    Failing to adequately disclose when Defendants' introductory teaser rates expire;

    d.    Actively misrepresenting the rates Defendants will charge when the teaser rates expire;

    e.    Failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges; and

    f.    Failing to provide customers advance notice of the variable rate Defendants will charge.

139.    The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

140.    As a direct and proximate result of Defendants' unlawful deceptive acts and practices, Plaintiffs and the Class have suffered injury and monetary damages in an amount to be

determined at the trial of this action but not less than $50 for each violation, such damages to be trebled, plus attorneys' fees.

141.     Plaintiffs and the Class Members further seek equitable relief against Defendants. Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices as alleged herein to be unlawful, an order enjoining Defendants from undertaking any further unlawful conduct, and an order directing Defendants to refund to Plaintiffs and the Class all amounts wrongfully assessed, collected, or withheld.

## COUNT III

## N.Y. GEN. BUS. LAW § 349-D(7)

## (ON BEHALF OF THE NEW YORK CLASS)

142.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

143.     Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349-d(7) on their own behalf and on behalf of each member of the New York Class who became a Just Energy customer on or after January 10, 2011.

144.     Section 349-d(7) provides that "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified." N.Y. GEN. BUS. LAW § 349-d(7).

145.     The marketing materials Defendants provided to Plaintiffs fail to disclose the actual factors that contribute to Just Energy's variable rates, much less do they make the required disclosure in a clear and conspicuous manner.

146.     The marketing materials Defendants provided to Plaintiffs fail to clearly and conspicuously disclose that Plaintiffs will be charged variable rates.

147.    The consumer contract Defendants provided to Plaintiffs—while they still had an opportunity to cancel without penalty—likewise does not clearly and conspicuously inform consumers about the actual factors affecting Just Energy's variable rates.

148.    The consumer contract Defendants provided to Plaintiffs does not clearly and conspicuously disclose that Plaintiffs will be charged variable rates.

149.    Through their conduct described above, Defendants have violated N.Y. GEN. BUS. LAW § 349-d(7) and have caused financial injury to Plaintiffs and Just Energy's other variable rate customers in New York.

150.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the New York Class have suffered injury and monetary damages in an amount to be determined at the trial of this action but not less than $500 for each violation, such damages to be trebled, plus attorneys' fees.

151.    Plaintiffs and the other Class Members further seek an order enjoining Defendants from undertaking any further unlawful conduct.  Pursuant to N.Y. GEN. BUS. LAW § 349-d(10), this Court has the power to award such relief.

# COUNT IV

## UNFAIR AND DECEPTIVE ACTS AND PRACTICES

**(ON BEHALF OF EACH STATE CLASS OTHER THAN NEW YORK, WHICH UPON INFORMATION AND BELIEF ARE CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, ILLINOIS, INDIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, NEW JERSEY, OHIO, PENNSYLVANIA, AND TEXAS)**

152.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

153.    As described above, Plaintiffs and the Class have suffered ascertainable losses of money and have otherwise been harmed as a result of Defendants' unfair and deceptive practices, including:

    a.    Using introductory teaser rates to misrepresent the cost of Defendants' energy;

    b.    Failing to adequately disclose that quoted rates are introductory teaser rates;

    c.    Failing to adequately disclose when Defendants' introductory teaser rates expire;

    d.    Actively misrepresenting the rates Defendants will charge when the teaser rates expire;

    e.    Failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges; and

    f.    Failing to provide customers advance notice of the variable rate Defendants will charge.

154.    The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policies of California, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, New Jersey, Ohio, Pennsylvania, Texas, and any other state where Just Energy sells variable rate energy, all of which aim to protect consumers.

155.    Plaintiffs and the members of each State Class are entitled to recover damages, and all other available relief for Defendants' unfair and deceptive practices under the laws of their states of residence:[42] California—CAL. BUS. & PROF CODE § 17200 *et seq.*, and CAL. CIV. CODE § 1750 *et seq.*, Delaware—DEL. CODE ANN. TIT. 6 SEC. 2511 *et seq.*, Florida—FLA. STAT.§ 501.201, *et seq.*, Georgia—GA. CODE. ANN. § 10-1-393(a) *et seq.*, and GA. CODE. ANN. § 10-1-371(5) *et seq.*, Illinois—815 ILL. COMP. STAT. § 505/1, *et seq.*, Indiana—IND. CODE § 24-5-0.5-3 *et seq.*, Maryland— MD. CODE COM. LAW § 13-303 *et seq.*, Massachusetts—MASS. GEN. LAWS CH. 93A, § 1 *et seq.*, Michigan— MICH. COMP. LAWS § 445.903(1) *et seq.*, New Jersey—N.J. STAT. ANN. § 56:8-2 *et seq.*, Ohio— OHIO REV. CODE § 1345.02 *et seq.*, Pennsylvania—73 P.S. § 201-2(4) *et seq.*, Texas— TEX. BUS. & COM. CODE § 17.46(a) *et seq.*.

156.    On October 2, 2017 Plaintiffs sent a letter a letter complying with CAL. CIV. CODE § 1782(a).  Plaintiffs presently do not claim relief under CAL. CIV. CODE § 1750 *et seq.* until and unless Defendants fail to remedy their unlawful conduct towards the California Class within the requisite time period, after which Plaintiffs seek all damages and relief to which the California Class is entitled.

157.    On October 2, 2017 Plaintiffs sent a letter complying with GA. CODE ANN § 10-1-399(b).  Plaintiffs presently do not claim relief under GA. CODE. ANN. § 10-1-393(a) *et seq.* until and unless Defendants fail to remedy their unlawful conduct towards the Georgia Class within the requisite time period, after which the Plaintiffs seek all damages and relief to which the Georgia Class is entitled.

---

[42] There is no material conflict between New York's consumer fraud law and the state statutes listed here.

158.    On October 2, 2017, Plaintiffs sent a letter complying with IND. CODE § 24-5-0.5-5(a).  Plaintiffs presently do not claim relief under the IND. CODE § 24-5-0.5-3 *et seq.* for "curable" acts until and unless Defendants fail to remedy their unlawful conduct towards the Indiana Class within the requisite time period, after which the Plaintiffs seek all damages and relief to which the Indiana Class is entitled.  Plaintiffs presently seek full relief for Defendants' "incurable" acts on behalf of the Indiana Class.

159.    On October 2, 2017, Plaintiffs sent a letter complying with MASS. GEN. LAWS CH. 93A, § 9(3).  Plaintiffs presently do not claim relief under MASS. GEN. LAWS CH. 93A, § 1 *et seq.* until and unless Defendants fail to remedy their unlawful conduct towards the Massachusetts Class within the requisite time period, after which the Plaintiffs seek all damages and relief to which the Georgia Class is entitled.

160.    Plaintiffs will comply with N.J. Stat. Ann. § 56:8-20.  Within ten (10) days of its filing, Plaintiffs will mail a copy of this Class Action Complaint to New Jersey's Attorney General.

161.    On October 2, 2017, Plaintiffs sent Defendants a letter complying with TEX. BUS. & COM. CODE § 17.505(a).  Plaintiffs presently do not claim relief under TEX. BUS. & COM. CODE § 17.46(a) *et seq.* until and unless Defendants fail to remedy their unlawful conduct towards the Texas Class within the requisite time period, after which the Plaintiffs seek all damages and relief to which the Georgia Class is entitled.

162.    Plaintiffs will comply with TEX. BUS. & COM. CODE § 17.501.  Within thirty days of filing Plaintiffs' Class Action Complaint, Plaintiffs will provide the consumer protection division of the Attorney General's office a copy of the Complaint.

## COUNT V

## COMMON LAW FRAUD

## (ON BEHALF OF A MULTISTATE CLASS UNDER THE LAWS OF EACH STATE WHERE DEFENDANTS DO BUSINESS, OR, ALTERNATIVELY, ON BEHALF OF EACH OF THE INDIVIDUAL STATE CLASSES AGAINST ALL DEFENDANTS)

163.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

164.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Multistate Class under the laws of the states where Defendants sold variable rate energy, and on behalf of each member of the individual State Classes under the laws of those States.

165.    As discussed above, Defendants (i) used introductory teaser rates to misrepresent the cost of Defendants' energy, and (ii) actively misrepresented the rates Defendants would charge when the teaser rates expire.

166.    In deciding to become and remain Just Energy customers, Plaintiffs and the Class reasonably relied on these misrepresentations to form the mistaken belief that Just Energy's teaser rates were representative of Just Energy's ordinary rates and that thus they would save money on their energy compared to what their local utility would have charged.

167.    To solidify and further their fraud, Defendants committed numerous fraudulent omissions including (i) failing to adequately disclose that quoted rates are introductory teaser rates, (ii) failing to adequately disclose when Defendants' introductory teaser rates expire, (iii) failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges, and (iv) failing to provide customers advance notice of the variable rate Defendants will charge.

168.     Defendants' fraudulent conduct was knowing and intentional.  The misrepresentations and omissions made by Defendants were intended to induce and actually induced Plaintiffs and Class Members to become and remain Just Energy customers.

169.     Defendants' fraud caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

170.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI

## FRAUD BY CONCEALMENT

### (ON BEHALF OF A MULTISTATE CLASS UNDER THE LAWS OF EACH STATE WHERE DEFENDANTS DO BUSINESS, OR, ALTERNATIVELY, ON BEHALF OF EACH OF THE INDIVIDUAL STATE CLASSES AGAINST ALL DEFENDANTS)

171.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

172.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Multistate Class under the laws of the states where Defendants sold variable rate energy, and on behalf of each member of the individual State Classes under the laws of those States.

173.     Defendants concealed material facts concerning their variable energy rates including (i) failing to adequately disclose that quoted rates are introductory teaser rates, (ii) failing to adequately disclose when Defendants' introductory teaser rates expire, (iii) failing to adequately disclose that Defendants' energy rates are consistently higher than the rates a customer's existing incumbent utility charges, and (iv) failing to provide customers advance notice of the variable rate Defendants will charge.

44

174.    Defendants sold Plaintiffs energy without disclosing these material facts and took active steps to conceal them including by (i) using introductory teaser rates to misrepresent the cost of Defendants' energy, and (ii) actively misrepresenting the rates Defendants would charge when the teaser rates expire.

175.    Defendants' material omissions and misrepresentations were intentional and were committed to protect Defendants' profits, avoid damage to Defendants' image, and to save Defendants money, and Defendants did so at Plaintiffs' expense.

176.    The information Defendants concealed was material because price is the most important consideration for consumers' energy purchasing decisions.

177.    Defendants had a duty to disclose the material information they concealed because this information was known and accessible only to Defendants; Defendants had superior knowledge and access to the facts, and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiffs.  Defendants also had a duty to disclose because Just Energy made affirmative misrepresentations about its energy rates, which were misleading, deceptive, and incomplete without disclosure of the material information.

178.    Just Energy still has not made full and adequate disclosures and continues to defraud Class Members and conceal material information regarding Just Energy's rates.

179.    Plaintiffs were unaware of these omitted material facts and would not have become Just Energy customers if they had known these concealed and/or suppressed facts; and/or would not have continued to be Just Energy customers for as long as they were. Plaintiffs' actions were justified.

180.    In deciding to become and remain Just Energy customers, Plaintiffs and the Class reasonably relied on Just Energy's misrepresentations and omissions to form the mistaken belief

that Just Energy's teaser rates were representative of Just Energy's ordinary rates and that thus

they would save money on their energy compared to what their local utility would have charged.

181.    Defendants' fraud by concealment caused damage to Plaintiffs and the Class, who

are entitled to damages and other legal and equitable relief as a result.

182.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants.

Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to

deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII

### UNJUST ENRICHMENT

### (ON BEHALF OF A MULTISTATE CLASS UNDER NEW YORK LAW, OR, ALTERNATIVELY THE LAWS OF EACH STATE WHERE DEFENDANTS DO BUSINESS, OR, ALTERNATIVELY, ON BEHALF OF EACH OF THE INDIVIDUAL STATE CLASSES AGAINST ALL DEFENDANTS)

183.    Plaintiffs re-allege and incorporate by reference each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

184.    Plaintiffs bring this claim on their own behalf and on behalf of each member of

the individual State Classes.

185.    This claim is brought under the laws of all states where Just Energy does business

that permit an independent cause of action for unjust enrichment, as there is no material

difference in the law of unjust enrichment as applied to the claims and questions in this case.

186.    As a result of their unjust conduct, Defendants have been unjustly enriched.

187.    By reason of Defendants' wrongful conduct, Defendants have benefited from

receipt of improper funds, and under principles of equity and good conscience, Defendants

should not be permitted to keep this money.

188.     As a result of Defendants' conduct it would be unjust and/or inequitable for Defendants to retain the benefits of their conduct without restitution to Plaintiffs and the Class. Accordingly, Defendants must account to Plaintiffs and the Class for their unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)     Issue an order certifying the Classes defined above, appointing the Plaintiffs as Class Representatives, and designating the undersigned firms as Class Counsel;

(b)     Find that Defendants have committed the violations of law alleged herein;

(c)     Render an award of compensatory damages of at least $100,000,000, the precise amount of which is to be determined at trial;

(d)     Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(e)     Declare that Defendants have committed the violations of law alleged herein;

(f)     Render an award of punitive damages;

(g)     Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(h)     Grant all such other relief as the Court deems appropriate.

Dated:  October 3, 2017
        Armonk, New York

**WITTELS LAW, P.C.**

\s\ Steven L. Wittels
By: Steven L. Wittels, Esq.
    J. Burkett McInturff, Esq.
    Tiasha Palikovic, Esq.
    Wittels Law, P.C.
    18 Half Mile Road
    Armonk, NY 10504
    Phone: (914) 319-9945
    Facsimile: (914) 273-2563
    e-mail: slw@wittelslaw.com
            jbm@wittelslaw.com
            tpalikovic@wittelslaw.com

*Lead Counsel for Plaintiffs and the Class*

    Daniel Hymowitz, Esq.
    Hymowitz Law Group, PLLC
    45 Broadway, 27th Floor
    New York, NY 10006
    Phone: (212) 913-0401
    Facsimile: (866) 521-6040
    e-mail: daniel@hymowitzlaw.com

*Co-Counsel for Plaintiffs and the Class*