**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FIRA DONIN and INNA GOLOVAN, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>JUST ENERGY GROUP INC.,<br>JUST ENERGY NEW YORK CORP., and<br>JOHN DOES 1 TO 100,<br><br>             Defendants. | Case No:  17 Civ. 5787 (WFK) (SJB) |

**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF**
<u>**DEFENDANTS' MOTION TO DISMISS**</u>

ROCHE CYRULNIK FREEDMAN LLP

Jason Cyrulnik
Paul Fattaruso
Alex Potter
99 Park Avenue, 19th Floor
New York, New York 10016
(929) 457-0050
jcyrulnik@rcfllp.com

*Attorneys for Defendants Just Energy Group Inc.*
*and Just Energy New York Corp.*

Dated: January 30, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   RECENT SECOND CIRCUIT PRECEDENT SUPPORTS DISMISSAL ............................. 3

    A.  *Richards* and *Mirkin* support dismissal .............................................................. 3

    B.  The other authorities Plaintiffs rely upon support dismissal ............................................. 5

II.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR ALL
    THE REASONS STATED IN JUST ENERGY'S MOTION TO DISMISS
    AND REPLY BRIEFS............................................................................................... 8

CONCLUSION.............................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Daniel v. Tootsie Roll Indus., LLC*,
  No. 17 Civ. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ................................. 7

*Donnenfeld v. Petro, Inc.*,
  333 F. Supp. 3d 208 (E.D.N.Y. Sept. 2018) ............................................................. 5

*Gorecki v. Clearview Elec.*,
  338 F. Supp. 3d 470 (W.D. Pa. 2018)................................................................. 5, 6

*Holve v. McCormick & Co., Inc.*,
  No. 16 Civ. 6702 (FPG), 2018 WL 3861406 (W.D.N.Y. Aug. 14, 2018)................................ 7

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018)........................................................................ 7

*Marshall v. Verde Energy USA*,
  No. CV181344JMVJBC, 2019 WL 6975424 (D.N.J. Dec. 19, 2019)...................................... 4

*Mercado v. Verde Energy USA*,
  No. 18 Civ. 2068 (JBG), 2019 WL 978531 (N.D. Ill. Feb. 2019)............................................. 6

*Mirkin v. Viridian Energy*,
  No. 3:15-CV-1057 (SRU), 2016 WL 3661106 (D. Conn. July 5, 2016).................................. 11

*Mirkin v. XOOM Energy*,
  931 F.3d 173 (2d Cir. 2019)........................................................................ 4, 5, 6, 7

*Mosely v. Vitalize Labs*,
  No. 13 CV 2470 RJD RLM, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) ........................... 8

*Richards v. Direct Energy Servs.*,
  915 F.3d 88 (2d Cir. 2019)........................................................................ 3, 6

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
  No. 15 CIV. 6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018)................................... 8

*Uddoh v. United Healthcare*,
  254 F. Supp. 3d 424 (E.D.N.Y. 2017) .............................................................. 10

Pursuant to the Court's directive at the conclusion of the January 8, 2020, conference, Defendants Just Energy Group Inc. and Just Energy New York Corp. (collectively "Just Energy") respectfully submit this Supplemental Brief in further support of Just Energy's pending Motion to Dismiss the Amended Complaint, addressing the prior briefing (Dkt. 27-28, 30) and the parties' notices of supplemental authority (Dkt. 41-42, 57-59, 85).

## INTRODUCTION

Plaintiffs' amended complaint suffers from fatal standing failures, jurisdictional flaws, and substantive deficiencies that doom each of their claims. The Court already afforded Plaintiffs the chance to amend their complaint (which they did in 2018) and to conduct fact discovery (which closed in February 2019).  Plaintiffs' amendment failed to cure the fatal deficiencies in their complaint, and Plaintiffs failed to take their fact discovery obligations seriously. Magistrate Bulsara denied Plaintiffs' belated efforts to reopen fact discovery, finding that "[t]here has been no diligence by Plaintiffs to pursue discovery or relief within the applicable deadlines." And this Court denied Plaintiffs' recent request for leave to amend their complaint yet again, finding that Plaintiffs failed to identify any new facts that warranted amendment.

Second Circuit precedent plainly supports dismissal of this lawsuit. The Court does not have jurisdiction over Just Energy Group, and Judge Vitaliano's recent decision dismissing the *Rovner* action filed by another Just Energy customer alleging similar claims confirms that threshold failure. As to the remaining defendants, the claims all fail as a matter of law, as detailed in the briefing to date and summarized below.

Plaintiffs contracted to purchase energy products from Just Energy at variable rates that the parties expressly agreed Just Energy would set each month, and Plaintiffs further agreed that Just Energy "does not guarantee financial savings." Plaintiffs seek to rewrite the Agreement's

1

broad provision affording Just Energy the discretionary right to set monthly rates based on a variety of business conditions and market factors into a promise that Just Energy's rates would track certain wholesale rates and guarantee savings. That theory is flatly contradicted by the plain language of the Agreement.

This is not the first time the courts in this Circuit have confronted attempts to manufacture such claims. Indeed, this is not even the only case in which a Just Energy consumer tried to assert these very claims against these Defendants. In August 2019, Judge Vitaliano dismissed a similar case filed by another Just Energy customer, holding that the Court had no jurisdiction over Just Energy Group and dismissing with prejudice the claims against the remaining defendants for failure to state a claim.

Recent precedent further confirms that the claims here should be dismissed.  Plaintiffs attempt to ward off dismissal of their meritless claims by pointing to case law divorced from the language of the controlling Agreement. Plaintiffs' claims are now even more untethered from the law than when Just Energy filed its Motion to Dismiss because the Second Circuit in *Richards* has expressly rejected construing the same language at issue in the Agreement here—"business and market conditions"—to require rates to track wholesale costs. That holding was then reaffirmed by the Second Circuit in *Mirkin*. The intervening decision in *Rovner* also made clear that the Court does not have personal jurisdiction over Defendant Just Energy Group.

While recent case law has further eroded the viability of Plaintiffs' claims, some things have not changed. Plaintiffs' operative complaint is still based merely on generalized indictments of the ESCO industry as a whole. Plaintiffs still grasp to convert claims by New York Plaintiffs against Just Energy New York, which sells policies to New York customers only, into a nationwide class-action against Just Energy Group and its other subsidiaries. Plaintiff Fira Donin

still lacks standing to sue because she undisputedly never contracted to purchase energy from either Defendant. And Plaintiffs' claims against Just Energy all still fail on the merits as a matter of law. The Court should still reject Plaintiffs' claims for the many reasons outlined in Just Energy's Motion to Dismiss (Dkt. 27-1) and Reply (Dkt. 30).

## ARGUMENT

## I.   RECENT SECOND CIRCUIT PRECEDENT SUPPORTS DISMISSAL

### A.   *Richards* and *Mirkin* support dismissal

Plaintiffs acknowledge that under their contracts, "Defendants have unilateral discretion to set the variable rates for electricity based on 'business and market conditions.'" Am. Compl. ¶ 263 (Dkt. 17). Yet the premise of Plaintiffs' claims is that Just Energy's rates were required to parallel wholesale costs, notwithstanding that the plain language of the contracts provides no such thing. *See* Opp'n at 16, 21-22 (Dkt. 28); Am. Compl. ¶ 120 (Dkt. 17). In February 2019, the Second Circuit rejected this same argument in a case involving the same contractual language. *Richards v. Direct Energy Servs.*, 915 F.3d 88, 98 (2d Cir. 2019); *see also* Dkt. 41.

Specifically, the Second Circuit held that a plaintiff's breach of contract claim was "near-frivolous" where the plain language of the contract provided that the variable rate would be set in the ESCO's discretion and would reflect "business and market conditions." *Richards*, 915 F.3d at 98-99. The court rejected the argument that "business and market conditions" meant that rates must bear a "direct relationship" to company's wholesale procurement costs. *Id.* at 98. The court concluded as "a matter of plain meaning" that "business and market conditions" encompass an energy company's discretion to set its variable rates to "achieve a target profit margin, match competitors' prices, and reduce customer losses, among other objectives." *Id.*

Plaintiffs attempt to distinguish *Richards*, arguing that "Plaintiffs' contract with Just Energy—unlike Richards' agreement with Direct Energy—does not afford Just Energy such

discretion." Dkt. 58 at 5. This argument contradicts Plaintiffs' own pleading: "Under the Defendants' customer contract, Defendants have unilateral discretion to set the variable rates for electricity based on 'business and market conditions.'" Am. Compl. ¶ 263 (Dkt. 17).

Plaintiffs raised a Second Circuit decision reversing dismissal of consumer plaintiffs' breach of contract claim based on the defendant energy company's alleged failure to comply with its variable rate contract provision. *See* Dkt. 58; *Mirkin v. XOOM Energy*, 931 F.3d 173, 174-175 (2d Cir. 2019).[1] The customer contract at issue in *Mirkin* contained materially different language from the contracts at issue here: it stated that the energy company's "monthly variable rate" was based on the energy company's "*actual and estimated supply costs*." *Id.* at 175 (original emphasis). In contrast, Plaintiffs' contracts with Just Energy do not promise to set rates based on supply costs or any other single factor, but only that changes to variable rates "will be determined by Just Energy according to business and market conditions." Just Energy Terms and Conditions at 4 (Dkt. 27-7).

The Second Circuit's decision in *Mirkin* supports dismissal of Plaintiffs' claims. It reaffirmed the *Richards* decision and highlighted the "crucial difference" between contracts that guarantee variable rates will be based on specific costs, versus those that provide broad discretion based on "business and market conditions." *Mirkin*, 931 F.3d at 178 n.3; *see also Marshall v. Verde Energy USA*, No. CV181344JMVJBC, 2019 WL 6975424, at *5 (D.N.J. Dec. 19, 2019) (distinguishing *Mirkin*: "In this case, the Terms of Service do not require Defendant to base its rates on supply costs. Therefore, this Court cannot reasonably draw the inference that Defendant's rates ought to track wholesale costs.").

---

[1] The court also affirmed dismissal of plaintiffs' claims for breach of the implied covenant of good faith and unjust enrichment, which was not challenged on appeal. *Id.* at 174 n.1.

*Mirkin* also undermines Plaintiffs' other contentions. Plaintiffs assert that they "plausibly rely on the Con Edison rate as reflective of a market-based rate" because in *Mirkin*, "the Second Circuit also endorsed the plaintiffs' use of Con Edison's rate as a plausible indicator of a market-based rate." Dkt. 58 at 3. Plaintiffs are wrong. The Second Circuit specifically considered the allegations of the *Mirkin* complaint only in the context of a contract provision based on supply costs, not as an indicator of a "market-based rate." And Just Energy never promised Plaintiffs a "market-based rate" in the first place, so Plaintiffs' attempted application of *Mirkin* is misplaced.

**B.  The other authorities Plaintiffs rely upon support dismissal**

None of the other authorities that Plaintiffs' rely upon can sustain their claims.[2]  The cases Plaintiffs cite in support of their breach of contract claim are readily distinguishable: none of them addressed a "business and market conditions" provision like the one interpreted by the Second Circuit in *Richards* and at issue here. *See* Dkt. 85 at 1-5. To the contrary, the contract terms at issue in those cases were markedly and materially different. *See, e.g.*, *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 220 (E.D.N.Y. Sept. 2018) (contract expressly tied customer price to "wholesale cost and other factors"); *Gorecki v. Clearview Elec.*, 338 F. Supp. 3d 470, 473, 474-75 (W.D. Pa. 2018) (contract contained "express provision" that plaintiff's rate was "based on wholesale market conditions" and did not "list factors besides 'wholesale market conditions'" that would influence rate fluctuation). Thus, "the relevant contractual provisions are critically different" in these cases compared to Plaintiffs' contracts with Just Energy because they required the energy company to "base its variable rates on its supply costs." *Mirkin*, 931 F.3d at 178 n.3. The contracts at issue in this case, like "the contract in *Richards*, by its plain

---

[2] Plaintiffs' second notice of "supplemental" authority (Dkt. 85) cites nine cases, only five of which were actually decided after their opposition brief.

terms, imposed no such requirement; the relevant provision there made no mention of procurement costs." *Id*. That difference is dispositive.

Plaintiffs also raised a case where the plaintiff's contract specified only that her variable rate would be based on "market conditions"—not the "business and market conditions" language at issue here. *Mercado v. Verde Energy USA*, No. 18 Civ. 2068 (JBG), 2019 WL 978531 (N.D. Ill. Feb. 2019); *see* Dkt. 85 at 4. In *Richards*, the Second Circuit attributed significance to the term "business" as opposed to only "market" conditions, stating that "business" is a "commercial enterprise carried on *for profit*," as distinct from "market," which is "the extent of *economic demand*." *Richards*, 915 F.3d at 98 (original emphasis; citing Black's Law Dictionary). Thus, the court reasoned as "a matter of plain meaning" that the combined term "business and market conditions" included discretion to set rates to "achieve a target profit margin, match competitors' prices, and reduce customer losses, among other objectives." *Id.*

Plaintiffs' authorities contradict other propositions their claims rely upon. For example, Plaintiffs peg their entire contract claim to a comparison of Just Energy's rates to Con Edison's rates, claiming the "utility's rates serve as an appropriate indicator of business and market conditions because they are based on the wholesale energy costs" born by Just Energy. Am. Compl. ¶ 151 (Dkt. 17); *see also* Dkt. 42 at 2. Yet Plaintiffs' cited authority expressly rejected that argument, finding it "need not consider" the defendant energy company's "variation from Duquesne Light's rate (another retail rate)." *Gorecki,* 338 F. Supp. 3d at 474. The Second Circuit has likewise rejected argument that a company "must have abused its discretion" simply because its variable rate was higher than the "Standard Service Rate," since "the entire point of electricity deregulation was to allow the market" to "determine rates." *Richards*, 915 F.3d at 99.

6

Plaintiffs argue that in *Mirkin*, "the Second Circuit also endorsed the plaintiffs' use of Con Edison's rate as a plausible indicator of a market-based rate." Dkt. 58 at 3. That is wrong for two reasons. First, as noted above, the Second Circuit recognized that the contract in *Mirkin* involved a rate provision based on supply costs, not on "business and market conditions." Second, the plaintiffs in *Mirkin* did not rely, as Plaintiffs do here, solely on a comparison of their rates to local utility rates as a proxy for wholesale supply costs. Instead, they "specifically calculated the market cost for supplying wholesale energy" and "attached their expert's calculations and explained, in detail, the variables used to determine the Market Supply Cost." *Mirkin*, 931 F.3d at 177. Plaintiffs have made no such allegations regarding the prevailing market supply cost, if such an allegation were even relevant (and it is not) under the plain language of their contracts with Just Energy.

Plaintiffs focus the remainder of their argument on the proposition that "whether a Plaintiff can bring a class action under the laws of multiple states is a question of predominance under Rule 23." Dkt. 85 at 5 (quoting *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96 (2d Cir. 2018)). *Langan* was already addressed in the original briefing. *See* Opp'n at 14, 20 (Dkt. 28); Reply at 12, 15-16 (Dkt. 30). Plaintiffs cite other cases that were decided prior to their opposition. *See Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018); *Holve v. McCormick & Co., Inc*., No. 16 Civ. 6702 (FPG), 2018 WL 3861406 (W.D.N.Y. Aug. 14, 2018). None of Plaintiffs' cited cases rebut the fact that *Langan* is inapposite here because its general rule applies only "as long as the named plaintiffs have standing to sue the named defendants." *Langan*, 897 F.3d at 93. Plaintiffs must be "within the class of persons who [were] concretely affected' by 'injurious conduct' *by the defendant*." *Mosely v. Vitalize Labs*, No. 13 CV 2470 RJD RLM, 2015 WL 5022635, at *3 (E.D.N.Y. Aug.

24, 2015) (emphasis added). Here, non–New York consumers of Just Energy's products and services would not have purchased them from either named Defendant. None of Plaintiffs' authorities address the application of *Langan* to a situation where plaintiffs seek to assert claims not only on behalf of out-of-state class members under those foreign states' laws, but also where the named defendants did not even operate or sell products in those states. Plaintiffs lack standing to assert claims on behalf of such a class.

If anything, Plaintiffs' authorities makes clear that *Langan* should be read narrowly: "Nothing in *Langan*, as I read it, precludes a defendant from moving to dismiss a CAFA plaintiff's claims under a particular statute pursuant to Rule 12(b)(6), on the grounds that the plaintiff fails to state a claim for its own account—a question entirely different from whether it has constitutional standing." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018). As Just Energy stated in its Motion to Dismiss, "Plaintiffs' claims for violations of the consumer protection statutes of thirteen other states should be dismissed for the same reasons as the New York claims brought under GBL § 349." Dkt. 27-1 at 20. Further, since "neither Defendant would have made sales to members of Plaintiffs' putative class outside of New York," Plaintiffs have likewise failed to state a claim under those statutes. Reply at 16 (Dkt. 30). *Langan* is not to the contrary.

## II.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR ALL THE REASONS STATED IN JUST ENERGY'S MOTION TO DISMISS AND REPLY BRIEFS

Not only does the recent case law discussed above confirm the deficiency of Plaintiffs' claims, but also Plaintiffs' operative complaint still fails as a matter of law for all the reasons set forth in Just Energy's original briefing.

*First*, the Court should dismiss all Counts (I-IX) asserted against Just Energy Group because it lacks personal jurisdiction over Just Energy Group. Plaintiffs do not allege sufficient

involvement and control by Just Energy Group over Just Energy New York for an agency theory of jurisdiction. Dkt. 27-1 at 6; Dkt. 30 at 3-4. They do not allege the elements necessary for an alter ego theory of jurisdiction. Dkt. 30 at 4-5. And they do not allege the transaction of business in New York by Just Energy Group related to Plaintiffs' claims sufficient to support a finding of jurisdiction. Dkt. 30 at 5-6. If there were any doubt about the sufficiency of Plaintiffs' allegations on their face, the Declaration of Richard Texeira (Dkt. 30-4) leaves no question that Plaintiffs' allegations purportedly supporting personal jurisdiction over Just Energy Group are incorrect.

Recent case law also confirms the Court lacks personal jurisdiction over Just Energy Group. *See* Dkt. 41. E.D.N.Y. Judge Vitaliano found that the court did not have specific jurisdiction over Just Energy Group under similar circumstances, noting that the plaintiffs' allegations in that case were "controverted by the declaration of Richard Teixeira," which, like the Teixeira Declaration submitted in support of Just Energy's motion to dismiss the instant action (Dkt. 30-4), "indicates that Just Energy Group and Just Energy New York are separate entities with separate books and records, separate offices, and separate bank accounts." *Rovner v. Just Energy Grp.*, No. 18-cv-2159, Dkt. 57-1 at 13-15 (E.D.N.Y. July 31, 2019).

The Court should also dismiss all Counts (I-IX) asserted against Just Energy Group because exercise of personal jurisdiction over Just Energy Group would violate due process. *See* Dkt. 27-1 at 7-8; Dkt. 30 at 6. Plaintiffs maintain that Just Energy Group has "sufficient contacts for purposes of due process" because "Defendants solicited and defrauded customers in New York and supplied their energy services to New York residents in New York." (Dkt. 28 at 7). But that is not the case: Just Energy Group has not solicited any customers in New York and has not supplied energy services to New York residents. *See* Texeira Decl. ¶¶ 9, 11 (Dkt. 30-4).

*Second*, the Court should dismiss all Counts (I-IX) asserted against "John Does 1 to 100" because Plaintiffs have not shown any basis for jurisdiction over unnamed entities, and the "John Doe" mechanism is not appropriate in these circumstances. *See* Dkt. 27-1 at 8-9; Dkt. 30 at 7. Plaintiffs' sole basis for resisting dismissal of their claims against "John Does 1 to 100" is to repeat their conclusory allegation that "Just Energy's 'management and employees' and 'shell companies and affiliates' transacted business in New York and caused substantial injury to New York residents in New York." Dkt. 28 at 7-8. But Plaintiffs provide no basis in law—and there is none—to sue defendants who have not been described and whose conduct has not even been specifically alleged.

*Third*, the Court should dismiss all Counts (I-IX) asserted by Fira Donin for lack of standing. *See* Dkt. 27-1 at 9-10; Dkt. 30 at 8-9. There is no dispute that the Just Energy accountholder for the Donin accounts at issue is Stanislav Donin. By law, spouses do *not* have standing to sue on behalf of one another. *See* Dkt. 27-1 at 9-10. Further, Plaintiffs' arguments for Fira Donin's standing are irrelevant and too late. Irrelevant because Plaintiffs do not cite any authority that if Fira Donin received e-mail communications regarding her husband's contract—which is by no means established—she somehow would have standing to sue on that contract. Too late because Plaintiffs' argument that Fira Donin is a third-party beneficiary is unpled, and Plaintiffs cannot "interpose new factual allegations or a new legal theory in opposing a motion to dismiss." *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017).

*Fourth*, the Court should dismiss Plaintiffs' claims under the GBL (Counts I-III) because they are time barred. Dkt. 27-1 at 14-16; Dkt. 30 at 11-12. They are also inadequately pled. Dkt. 27-1 at 16-19; Dkt. 30 at 13-15.

Plaintiffs ask the Court to toll the three-year limitations period barring their claims based on the "continuing violation doctrine." Dkt. 28 at 13. But Plaintiffs still have not identified any information to which they did not have access that precluded them from asserting their claims within the limitations period. Rather, they always had access to the rates they were charged and to publicly available information about other providers' rates. Plaintiffs further contend that "the issue of fraudulent concealment is not to be decided on the pleadings"—but cite a single case that sets forth no such rule and cannot save Plaintiffs' fundamentally inadequate pleading. Dkt. 28 at 14.

Plaintiffs also fail to plead violations of the GBL. Plaintiffs' claims under Sections 349 and 349-d(3) (Counts I-II) fail because, as they concede, they must demonstrate that Just Energy committed consumer-oriented acts that were materially misleading or deceptive and that Plaintiffs suffered injury as a result. Dkt. 28 at 14, 16-17. Plaintiffs have not alleged deception because they have not shown deceptive acts that *actually have*—as opposed to *hypothetically might*—caused injury to Plaintiffs. And the Agreement makes clear that Just Energy did not guarantee that its variable rates would be higher or lower than any competitor's rates.

Plaintiffs' claim under Section 349-d(7) (Count III) also fails as a matter of law because that section requires only that "all variable charges shall be clearly and conspicuously identified"—which Just Energy indisputably did. Plaintiffs' reading of that language to require the disclosure of all *factors* contributing to the variable rate (Dkt. 28 at 19) is disposed of not only by the plain language of the statute, but also by case law: "section 7 requires disclosure only of the existence of a variable rate, rather than the basis on which it varies." *Mirkin v. Viridian Energy*, No. 3:15-CV-1057 (SRU), 2016 WL 3661106, at *5 (D. Conn. July 5, 2016).

11

*Fifth*, the Court should dismiss Plaintiffs' claims for violations of unfair and deceptive practices outside of New York (Count IV). *Langan* simply does not apply where a plaintiff does not have standing to assert claims against the relevant defendants. Further, Plaintiffs' out-of-state claims should be dismissed on their own terms for the same reasons as Plaintiffs' GBL claims.

*Sixth*, the Court should dismiss Plaintiffs' fraud claims (Counts V and VI) because Plaintiffs failed to plead them with particularity. Dkt. 27-1 at 11-13; Dkt. 30 at 9. Plaintiffs also failed to demonstrate a duty to disclose or a breach of any such duty in support of their fraudulent concealment claims. Dkt. 27-1 at 13-14; Dkt. 30 at 10.

Plaintiffs simply state that their claims "satisfy the notice-pleading requirements of Rule 8(a)." Dkt. 28 at 9. They do not even address Rule 9(b)'s pleading requirements or explain why they do not dispose of their fraud claims.

Plaintiffs also argued that Just Energy "had a duty to disclose their variable rates under the superior knowledge theory and because they made 'partial or ambiguous statement[s].'" Dkt. 28 at 10-11. But they failed to show how this case involves any partial disclosures that could give rise to such a duty. Plaintiffs have also not sufficiently alleged that Just Energy breached such a duty, asserting that Just Energy "failed to tell their customers when their introductory rates would expire" while ignoring that the welcome e-mail included in the complaint shows that *there was no introductory rate* for the Donin contract in the first place. Dkt. 28 at 10; Am. Compl. ¶ 39 (Dkt. 17). Further, Plaintiffs offer no explanation as to why Just Energy's variable rate disclosures are inadequate and actionable as fraudulent concealment. Dkt. 28 at 10-11.

*Seventh*, the Court should dismiss Plaintiffs' claim for unjust enrichment (Count VII) because the matter is governed by an express contract. *See* Dkt. 27-1 at 25; Dkt. 30 at 18-19. There is no dispute about the existence of the contracts governing the parties' relationships.

Under such circumstances, courts routinely dismiss unjust enrichment claims as duplicative of underlying breach of contract claims, even when pled in the alternative. *Id.*

*Eighth*, the Court should dismiss Plaintiffs' breach of contract claim (Count VIII) because they fail to allege facts plausibly suggesting that Just Energy did not set rates according to "business and market conditions." *See* Dkt. 27-1 at 21-22; Dkt. 30 at 16-17. The pleading deficiencies are numerous: Plaintiff Donin failed to allege the existence of a contract between herself and Just Energy, Plaintiffs' allegations do not support their claims that Just Energy charged rates higher than those set forth in the e-mails and welcome letters, and Plaintiffs do not even compare Just Energy's rates to other *ESCO* providers' rates. Moreover, the recent Second Circuit decisions in *Richards* and *Mirkin* confirm that Plaintiffs' allegations are non-actionable due to the plain meaning of "business and market conditions."

*Ninth*, the Court should dismiss Plaintiffs' claim for breach of the implied covenant of good faith (Count IX) because it is duplicative of Plaintiffs' breach of contract claim. Dkt. 27-1 at 23; Dkt. 30 at 17-18. Also, Plaintiffs have not demonstrated that Just Energy acted arbitrarily or irrationally in setting rates. Dkt. 27-1 at 23-24. Plaintiffs' claim for breach of the implied covenant of good faith and breach of contract impermissibly rely on the same allegations of overcharges and abuse of rate-setting discretion. *Compare* Am. Compl. ¶¶ 253-58 *with id.* ¶¶ 263-66 (Dkt. 17). Plaintiffs' claim also fails because it does not follow from the mere allegation that Just Energy charged rates that are different from those charged by the local utility that Just Energy somehow set rates arbitrarily or unreasonably. That is especially true where Plaintiffs were paying a variable rate that their Agreement spelled out in plain English could "change every month" and that the Agreement "does not guarantee financial savings." Just Energy Terms and Conditions at 2 (Dkt. 27-7).

## <u>CONCLUSION</u>

For these reasons, and for those reasons detailed in Just Energy's Opening Brief and Reply Brief in support of its Motion to Dismiss, Just Energy respectfully requests that the Court grant Just Energy's Motion to Dismiss Plaintiff's Class Action Complaint with prejudice.


Dated: January 30, 2020                                    ROCHE CYRULNIK FREEDMAN LLP


                                                   /s/ Jason Cyrulnik
                                                   Jason Cyrulnik
                                                   Paul Fattaruso
                                                   Alex Potter
                                                   99 Park Avenue Suite 1910
                                                   New York, New York 10016
                                                   (929) 457-0050

                                                   *Attorneys for Defendants Just Energy Group*
                                                   *Inc. and Just Energy New York Corp.*